# United States Court of Appeals
### For the Eighth Circuit
_____

No. 25-1571
_____

United States of America,

*Plaintiff - Appellant,*

v.

Victor Dominquez,

*Defendant - Appellee.*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: February 6, 2026
Filed: July 30, 2026
_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

COLLOTON, Chief Judge.

A jury found Victor Dominquez guilty of aggravated sexual abuse of a minor. The district court, however, then granted his motion for judgment of acquittal and set aside the verdict. The court concluded that there was insufficient evidence to prove one element of the offense. On the government's appeal, we respectfully disagree with the district court's conclusion, and therefore reverse.

I.

A grand jury charged Dominquez in an eight-count indictment with aggravated sexual abuse of a minor, abusive sexual contact, and felony child abuse in Indian country. A jury convicted on all counts, and this appeal concerns only the district court's judgment of acquittal on the charge of aggravated sexual abuse of a minor under 18 U.S.C. § 2246(2)(C).

On that count, the indictment charged:

> Between on or about March 2006 and March 2012, in Indian country, in the District of South Dakota, the defendant, Victor Dominquez, did knowingly engage and attempt to engage in a sexual act, that is: the penetration, however slight, of the anal and genital opening by hand or finger, with [M.D.], an Indian person, and a child who had not attained the age of 12 years, with an intent to arouse and gratify the sexual desire of any person, all in violation of 18 U.S.C. §§ 1152, 2241(c), and 2246(2)(C).

The first element of this offense, as set forth in the jury instruction at trial, required the government to prove that Dominquez engaged or attempted to engage in a sexual act, that is, "the penetration, however slight, of the genital opening by a finger, with M.D. with an intent to arouse or gratify the sexual desire of any person."

In its order granting a judgment of acquittal, the district court concluded that "even when the evidence is construed in a light most favorable to the verdict while giving the government all reasonable inferences, it is simply too ambiguous and nonspecific to prove that Mr. Dominquez engaged in an act of penetration, however slight, of M.D.'s genital opening." The court "suspect[ed] that M.D. likely would have given testimony establishing Mr. Dominquez penetrated her genital opening

-2-

with his finger, had she been asked clarifying questions," but explained that it could not "sustain a conviction based on mere suspicion or possibility of guilt."

The government argues on appeal that the district court erred in ordering a judgment of acquittal. We review the district court's order *de novo*. *United States v. Helder*, 452 F.3d 751, 753 (8th Cir. 2006).

## II.

A district court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29. The court "must consider a motion for judgment of acquittal with 'very limited latitude' and must neither assess the witnesses' credibility nor weigh the evidence." *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007) (quoting *United States v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002)). The court must view the evidence in the light most favorable to the government, drawing all reasonable inferences in favor of the jury's verdict. *United States v. Castillo*, 713 F.3d 407, 411 (8th Cir. 2013). "Evidence supporting a conviction is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 688 F.3d 494, 502 (8th Cir. 2012) (internal quotation omitted); s*ee Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

The dispute here concerns the sufficiency of the evidence to prove beyond a reasonable doubt the first element of aggravated sexual abuse of a minor. The government was required to establish that Dominquez engaged in, or attempted to engage in, a "sexual act"—that is, "the penetration, however slight, of the anal or genital opening of another by a hand or finger or any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C). The specific question is whether the evidence supported the

jury's finding that Dominquez engaged in "the penetration, however, slight, of the . . . genital opening" of the alleged victim.

The term "genital opening" is not a medical term of art, and the statute does not define it. Standing alone, the term "could conceivably refer to any of at least three successive openings in the female genitalia: (1) the exterior opening bounded by the outer lips or labia majora, (2) the interior opening bounded by the contained inner lips or labia minora, and (3) the opening, yet further along the same channel, called the vaginal orifice." *United States v. Jahagirdar*, 466 F.3d 149, 152 (1st Cir. 2006). The First Circuit thought the "most straightforward reading" of the statute encompassed all three openings. *Id*. This court has noted the issue, but found it unnecessary to reach that interpretive question. *United States v. Reddest*, 512 F.3d 1067, 1072 (8th Cir. 2008). In this case, the government maintains that Dominquez penetrated the innermost area, the vaginal orifice of M.D., in which case it would be unnecessary to address whether penetration of another opening would suffice.

At trial, the prosecution questioned M.D., then 24 years old, about Dominquez touching her when she was between the ages of 5 and 12. The parties focus on the italicized excerpts from M.D.'s testimony below:

> Q: *Were there ways he was touching you around the same time that he was – when you were the same age as when he was showing you the pornography*?
>
> A: *Yes*.
>
> Q: What do you remember about that?
>
> A: Like growing up, he was the one who was taking care of the kids, right, and *he was the one that gave us baths, and whenever he would give me a bath – and was like every single time, he would always be focused on my vagina and how to clean it properly, but he would just*

-4-

*use his fingers with like, just his fingers, and it would feel really weird, like I'd feel like a stone in my stomach, and just kind of like – like a gross feeling like, this just feels wrong, but at the same time, it felt kind of good. . . . .*

Q: So when you were being bathed by him, does this go back as long as you can remember?

A: Pretty much because he was the only one bathing us, like my mom didn't take no part in that. *All I remember with being bathed was just him and then that specifically, but the whole, you need to make sure you clean down there good because nobody wants to smell like a smelly vagina basically, no one wants to smell that, no one wants to be near that.*

Q: But then he was doing it himself?

A: Yep. . . .

Q: Are there other ways that he would touch you other than putting his fingers in your vagina?

A: Like whenever my mom would be gone overnight, and I'd be allowed to go downstairs and spend the night in his room and sleep with him, he would, like, when we're sleeping together, 'cuz like cuddling - - cuddling basically, but just fondling me on my chest or on my butt, and growing up too because I started to hit puberty like where I started growing breasts and stuff, I didn't really wear a sports bra or anything or a training bra because I wasn't really - - like, I felt like I didn't have to, but you could clearly tell that I had boobs growing, and he would point that out or want to look at them or sometimes he would, like, make fun of me or, like, pinch them or flick them or he'd even point out like my butt, like, I'd be doing, like, dishes or doing something, like, in the sink, he would like hit my butt or slap it, but not, like, in a violent way, but like - - just kind of, like, just for a reason to touch me, I guess.

In sum, M.D. testified that when Dominquez was "touching" her, he "focused on [her] vagina" and how "to clean it properly." She said that he "would use his fingers," and that it would "feel really weird" when he did so, "like a stone in [her] stomach."

The dictionary definition of "vagina" is "a canal that leads from the uterus of a female mammal to the external orifice of the genital canal." *Webster's Third New International Dictionary* 2528 (2002); *see The American Heritage Dictionary of the English Language* 1911 (5th ed. 2018) (similar); *New Oxford American Dictionary* 1911 (3d ed. 2010) (similar). The medical definition is comparable: "The part of the genital canal in the female, extending between the cervix of the uterus and the vestibule." *Stedman's Medical Dictionary* 2083 (28th ed. 2006). The government contends, therefore, that M.D.'s testimony adequately supports a finding beyond a reasonable doubt by a rational jury that Dominquez penetrated the genital opening—here, the vaginal orifice—when he "clean[ed]" M.D.'s "vagina" with his fingers.

Dominquez argues that M.D.'s testimony was too ambiguous and nonspecific to establish penetration because she might have used a colloquial meaning of the term "vagina." Some (but not all) dictionaries refer to a "colloquial" meaning of "vagina" as "the female external genitals or genital area" or "the external parts of the female genital organs." *Vagina*, Oxford English Dictionary Online, https://www.oed.com/dictionary/vagina_n?tab=meaning_and_ use#16088296 (last visited July 7, 2026) ("colloquial" definition), *Vagina*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/vagina (last visited July 7, 2026) (secondary definition, "not used technically"). A leading medical dictionary, in defining "vagina," instructs the user to "[a]void the colloquial and jargonistic use of this word as a synonym of vulva." *Stedman's Medical Dictionary* 2083 (italics omitted). Dominquez contends that without further clarification, the record allows for the possibility that M.D. referred only to Dominquez using his fingers to clean the

external parts of her genital organs, such that there was no penetration of the "genital opening."

Drawing all reasonable inferences in favor of the verdict, we conclude that a rational jury could have understood M.D. to use the ordinary anatomical meaning of "vagina." A rational jury may infer that a witness uses proper or formal English. If the English language has evolved (or deteriorated) to the point where a word carries a secondary meaning in informal conversation, then the government is not required specifically to elicit testimony that the witness has eschewed that colloquial use in her testimony. Insofar as a defendant believes that a colloquial meaning would help his case, then the defense has an opportunity on cross-examination to seek elaboration and to exploit any potential ambiguity. *See United States v. Never Misses A Shot*, 781 F.3d 1017, 1025 (8th Cir. 2015); *Reddest*, 512 F.3d at 1072. But the government may rest on an understanding that the witness used ordinary or proper English, and a rational jury may infer that use.

In this case, a rational jury could have found beyond a reasonable doubt that M.D., a 24-year-old woman, used the ordinary anatomical meaning of "vagina" when she testified at trial. The jury reasonably could have found that Dominquez would "use his fingers" to "clean" her vagina, an action that necessarily would involve penetration of the vaginal orifice. The jury likewise reasonably could have found that when M.D. described feeling a "stone in [her] stomach," she reported a physical sensation consistent with Dominquez penetrating her vaginal orifice. Accordingly, the evidence was sufficient to support the jury's finding of guilt.

Dominquez relies on two prior decisions of this court in which evidence was insufficient, but neither compels a judgment of acquittal here. In *Reddest*, this court reversed a conviction for sexual abuse where the only evidence arguably sufficient to prove penetration was the alleged victim's statement that the defendant's finger went "[r]ight in my—almost close to my [hole]." 512 F.3d at 1072. This court held

that the evidence was insufficient because the witness's statement was "nondescript, internally inconsistent" and "laden with ambiguity." *Id*. Although the witness elsewhere testified that the defendant "touched [her] vagina," follow-up questions and answers "ma[de] clear" that the witness "was not using the word 'vagina' in its anatomically correct sense." *Id*. In *United States v. Plenty Arrows*, 946 F.2d 62 (8th Cir. 1991), this court held that evidence was insufficient to prove penetration where the alleged victim testified only that the defendant touched him "from my back of my behind," and did not explain whether he was referring to his buttocks, anus, or some other part of his anatomy. *Id*. at 65. The court explained that "[t]he statute is anatomically specific," and that the testimony "lack[ed] the necessary specificity." *Id*.

Here, by contrast, the witness referred with anatomic specificity to her "vagina," said that Dominquez was focused on how "to clean" her vagina, and testified that he "would just use his fingers" to do so. Neither party asked additional questions about the witness's reference to her vagina, and this is not a case like *Reddest* where the record "makes clear" that the witness used the term in an anatomically incorrect sense. If the jury made the reasonable inference that the witness used the ordinary anatomical meaning of "vagina," as the jury was permitted to do, then the testimony was sufficiently specific and clear to support the verdict.

For these reasons, the order granting judgment of acquittal is reversed.

KELLY, Circuit Judge, dissenting.

The district court found there was insufficient evidence that Dominquez penetrated M.D.'s vagina to support a conviction on the § 2246(2)(C) count. I agree.

M.D. testified that:

> [W]henever he would give me a bath — and it was like every single time, he would always be focused on my vagina and how to clean it properly, but he would just use his fingers with like, just his fingers, and it would feel really weird, like I'd feel like a stone in my stomach, and just kind of like — like a gross feeling, like, this just feels wrong, but at the same time, it felt kind of good.

M.D. never said Dominquez put his fingers inside her or in her vagina. Rather, she said Dominquez "focused on her vagina" and "used his fingers" to clean her; she never discussed penetration. Indeed, the only person who said Dominquez put his fingers "in [M.D.'s] vagina" was the prosecutor. Instead, M.D.'s testimony indicates Dominquez's contact was with her *external* genitals—her vulva. The ambiguity in her testimony is notable because there is a significant difference—both legally and in terms of physical sensation—between external stimulation and penetration.

M.D. said, "*I'd* feel like a stone in my stomach." She did not say that, when Dominquez used his fingers, "*it* felt like a stone in my stomach." Anatomically, the vagina is distinct from the stomach, in location, function, and kind, for a child or an adult. In context, the more reasonable—and more likely—inference is that M.D. was using a metaphor to describe an emotional sensation, not a physical one. The phrase "stone in my stomach" hews closely to the idiom "the pit of my stomach." See The Pit of One's/the Stomach, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/the%20pit%20of%20one's/the%20stomach ("the part of a person's stomach where strong feelings of nervousness, excitement, etc., can be felt"); Pit of Your Stomach, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/pit-of-stomach ("the part of the body in which people say they feel fear or nervousness"). And M.D. provided additional descriptions of how she felt: "a gross feeling" that "just feels wrong, but at the same time, it felt kind of

good." I am thus unpersuaded that it is reasonable to infer that because M.D. "felt like a stone in [her] stomach," Dominquez penetrated her vagina.

M.D. also testified that, as a child, she tried to replicate "that feeling [she] would get whenever [Dominquez] would clean [her]." She did so by "hump[ing]" or "rub[bing] herself" on things including plushies, pillows, and her own heel—behaviors her family testified to observing. And yet, all the testimony regarding those behaviors described external stimulation. No one testified that M.D. penetrated herself to mimic the feeling she got when Dominquez "clean[ed]" her. This evidence further indicates that Dominquez's contact was with her external genitals, not with her internal vaginal canal.[1]

C.B.C.—M.D.'s sister, who is close to M.D.'s age and was raised in the same home—also testified. When C.B.C. described how Dominquez would clean her, she said he used a rag to put Resinol—a cream for rashes—"in [her] vagina." But when the prosecutor asked C.B.C. to clarify where Dominquez's fingers would go when he applied the cream, C.B.C. described her external genitals: "Around, like, my clit and, like, that area and—yeah, just down there." C.B.C. then confirmed that she remembered "his head being down there" and described "down there" as "[i]n my private by my, like, in my vagina." The clitoris is not the vagina. And C.B.C. could not have meant that Dominquez's head was literally inside her vaginal canal. The only reasonable interpretation of C.B.C.'s testimony is that she used "vagina" in the colloquial sense, to mean that Dominquez was touching her outer genital area when he "cleaned" her and applied rash cream.[2]

---

[1]Unlike M.D., her sister C.B.C. specifically described a single incident when Dominquez penetrated her. She said: "I felt something insert into me, and it hurt really bad, like, my whole inside part." This stands in stark contrast to M.D.'s testimony that Dominquez's contact "felt kind of good."

[2]Of course, C.B.C. is not M.D., but the sisters grew up together and described similar abuse. C.B.C. described "cleaning" as distinct from an instance of penetration

-10-

M.D.'s mere use of the word "vagina" cannot sustain this conviction, because we do not look at a single word of testimony in isolation. See United States v. Reddest, 512 F.3d 1067, 1072 (8th Cir. 2008) (vacating conviction where other trial testimony "ma[de] clear that [the victim] was not using the word 'vagina' in its anatomically correct sense"). Nothing about M.D.'s testimony suggests that she "referred with anatomic specificity to her 'vagina.'" To assume as much, against all context supporting the opposite conclusion, is an unreasonable inference.

Finally, the suggestion that any lingering ambiguity in M.D.'s testimony is, in part, the defendant's fault because he had the opportunity on cross-examination to elaborate on, or exploit, that ambiguity impermissibly shifts the burden of proof from the prosecution to the defense. It was the government's burden to prove beyond a reasonable doubt that Dominquez penetrated M.D.'s genital opening. Here, the evidence was too ambiguous to meet that burden. Viewing the evidence in the light most favorable to the verdict and granting the government all *reasonable* inferences, the verdict cannot stand because the evidence does not support a finding that Dominquez penetrated M.D.'s vagina. United States v. Castillo, 713 F.3d 407, 411 (8th Cir. 2013).

I respectfully dissent.

_____

and referred to her "vagina" as distinct from her "inside part," informing the jury how she used and understood those terms.